```
IN THE UNITED STATES DISTRICT COURT
  FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DANNY L. THOMAS,                    )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )    1:02CV00953
                                    )
JO ANNE B. BARNHART,                )
Commissioner of Social Security,    )
                                    )
        Defendant.                  )
```

### RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

Plaintiff Danny L. Thomas seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his claim for disability insurance benefits. The Commissioner's denial decision became final on the 61st day after the issuance of the May 28, 2004 hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

Plaintiff filed an application for disability insurance benefits on September 13, 1999, alleging disability as of August 15, 1998 due to fibromyalgia, back problems, headaches, memory problems, urinary tract infections, irritable bowel syndrome ("IBS"), and severe pain in his hands and fingers. Plaintiff's application was denied initially and on reconsideration, and plaintiff filed a request for a hearing before an ALJ. A hearing was held before ALJ Joyce Harrison Smith in Greensboro, North Carolina, on September 29, 2000, and a decision denying plaintiff's claim was issued on April 18, 2001. Plaintiff filed a request for

review, and on September 6, 2002, the Appeals Council found no basis on which to review the ALJ's decision.  Plaintiff filed a request for judicial review in this Court on November 6, 2002.

On April 10, 2003, United States District Judge James A. Beaty directed the Appeals Council to remand this case back to ALJ Joyce Harrison Smith, pursuant to Sentence Six of 42 U.S.C. § 405(g), in order to update the evidence of plaintiff's medical condition, evaluate plaintiff's residual functional capacity in light of such updated information, and, if warranted, to obtain further evidence from a Vocational Expert ("VE").  Accordingly, on May 16, 2003, the Appeals Council remanded this case to ALJ Joyce Harrison Smith.

A supplemental hearing was held before ALJ Joyce Harrison Smith in Greensboro, North Carolina, on December 15, 2003, and the ALJ issued a second decision denying plaintiff's claim on May 28, 2004.  Plaintiff opted not to appeal the ALJ's decision to the Appeals Council.  Accordingly, the ALJ's decision became final on the 61st day after its issuance.  Plaintiff then filed a motion for summary judgment in this Court on December 27, 2004.

The scope of review by this Court of the Commissioner's decision denying benefits is limited.  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Where this is so, the Commissioner's findings are conclusive.  The court may not reweigh conflicting evidence that is

substantial in nature and may not try the case de novo.  Id.
"Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

In reaching a decision on plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations.  20 C.F.R. § 404.1520 (2005).  Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work.  The burden of persuasion is on the claimant through the fourth step.  See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)(per curium).  If the claimant reaches the fifth step the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience.  Id.

In this case, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since August 15, 1998, his alleged

onset date of disability. (Tr. at 16)[1] The second step in the sequential evaluation process is to determine whether plaintiff has a severe impairment. A severe impairment is one which, either separately or in combination with another impairment, significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c) (2005). At step two, the ALJ found that plaintiff suffered from a "severe" combination of the following impairments: degenerative disc disease of the lumbar spine; fibromyalgia; IBS; myocardial infarction in January of 1999, status post percutaneous transluminal angioplasty and stent placement due to residual circumflex stenosis; allergic rhinitis; and adjustment disorder with depressed mood. (Id. at 18) Moving on to step three of the sequential evaluation, the ALJ found that plaintiff did not have an impairment, or combination of impairments, that met or equaled a listing in Appendix 1, Subpart P, Regulation Number 4. (Id.)

At step four, the ALJ found that plaintiff retained the residual functional capacity to perform medium work, so long as he met the following conditions: limited to short, routine, repetitive tasks; a low stress, non-production environment requiring little interpersonal contact; no exposure to dust, gases, or other

---

[1] The record in this case contains two transcripts. The first transcript, Docket No. 16, encompasses the administrative proceedings through the Appeals Council's denial of review of ALJ Joyce Harrison Smith's first denial decision on September 6, 2002. The second, or supplemental, transcript, Docket No. 17, encompasses the entirety of the first transcript, plus this Court's remand pursuant to Sentence Six of 42 U.S.C. § 405(g), the Appeals Councils remand to ALJ Joyce Harrison Smith, and the entirety of the record on remand. All transcript references set forth herein shall be to Docket No. 17, the supplemental transcript.

pulmonary irritants; no lifting of more than 40 pounds; and not required to sit or stand for prolonged periods of time. (Id. at 20) The ALJ also found that plaintiff is able to walk without difficulty. (Id.) Accordingly, the ALJ found that plaintiff was not capable of returning to his past relevant work as a city code inspector. (Id.)

Finally, at step 5, the ALJ found, based on the testimony of a VE, and considering Medical-Vocational Rules 203.29 and 203.22, that there are a significant number of jobs in the national economy which plaintiff can perform. (Id. at 21-22) Such jobs include laundry worker II, dining room attendant, small products assembler, plastic hospital products assembler, and ampoule filler. (Id. at 21) Therefore, the ALJ found that plaintiff was not under a "disability," as such is defined in the Social Security Act, 20 C.F.R. § 404.1520 (2005), at any time between August 15, 1998, his alleged onset date of disability, and May 28, 2004, the date of the ALJ's second denial decision. (Id. at 22)

In this action for judicial review, plaintiff first argues that the ALJ's findings at step two of the sequential evaluation are not supported by substantial evidence. (Docket No. 21, Pl.'s Br. at 15-17) Specifically, plaintiff asserts that his testimony at the hearing and the medical evidence of record demonstrate that his degenerative disc disease of the cervical spine constitutes a "severe" impairment. (Id.) Plaintiff bases his argument on an MRI dated September 9, 2002, which showed a mild bulge at C4-5, a larger bulge with bilateral spurring at C5-6, and a disc herniation

at C6-7. (Tr. at 466) Additionally, plaintiff points to evidence in the record that plaintiff sporadically complained to his treating physicians about neck and arm pain. (Id. at 328, 408-09, 434)

An impairment is "severe" if it significantly limits a claimant's physical or mental ability to perform basic work activities.[2] 20 C.F.R. § 404.1521a (2005). The Fourth Circuit has held that in order to find an impairment non-severe, the impairment must be "a <u>slight abnormality</u> which has such a <u>minimal effect</u> on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)(emphasis in original)(quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). Plaintiff bears the burden of proving the severity of his impairments. See 20 C.F.R. § 404.1512(a)(2005); Hunter, 993 F.2d at 35.

In this case, plaintiff did not complain of or receive treatment for neck, shoulder, or arm pain with any consistency during the six years covered by the medical records. See Tr. at

---

[2] Basic work activities include:

"(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting."

20 C.F.R. § 404.1521(b)(2005).

Case 1:02-cv-00953-JAB   Document 24   Filed 09/07/05   Page 6 of 17

328, 408-09, 434. Additionally, plaintiff's hearing testimony did not credibly establish that his purported cervical degenerative disc disease caused him more than minimal functional limitations. Plaintiff testified at the first hearing that his pain was so severe that he was unable to raise his hands above his head. (Tr. at 224) However, when the ALJ noted that plaintiff had spontaneously reached his right hand above his head during the hearing, plaintiff amended his testimony, and stated that: "Dr. Richie said it was probably just some arthritis forming in the neck. . . . And any movement of my head and neck and it just pops and cracks." (Id. at 225) Plaintiff also explained that if he used gasoline powered hedge clippers for 30 minutes, his shoulders would be "extremely stiff and sore" the next day. (Id.) Plaintiff did not describe any neck or shoulder related limitations whatsoever at the supplemental hearing.[3]

Furthermore, Dr. Edwin Bryan, the Medical Expert ("ME") testified at the supplemental hearing that although the September 2002 MRI demonstrated that plaintiff had some disc bulging in his cervical spine, plaintiff's medical notes did not demonstrate "consistent neurological signs." (Tr. at 535) See also Tr. at 19 ("a bulging disc of the claimant's cervical spine has not resulted in consistent symptoms.")

---

[3] Plaintiff did note that he had arm or shoulder pain in 1991 "just out of the clear blue" that might "last a second, it might last a minute. It may go away." (Tr. at 521) However, plaintiff did not connect this pain with his purported neck pain.

-7-

"Where medical testimony is conflicting, the Secretary has the right to decide between the various conclusions offered." Dew v. Bowen, No. 88-2892, 1988 WL 37388, at *2 (4th Cir. April 5, 1989)(unpublished)(citing 20 C.F.R. § 404.1527 (2005)). The Fourth Circuit has held that:

> [T]he testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record. However, we have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record. Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, an ALJ's determination coming down on the side on which the non-examining, non-treating physician finds himself should stand.

Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984)(internal citations omitted). See also Whittler v. Shalala, No. 93-2409, 1995 WL 38981, at *3 (4th Cir. Feb. 2, 1995)(unpublished).

Accordingly, the Court finds that the ALJ's decision to credit Dr. Bryan's testimony and plaintiff's failure to seek consistent medical treatment in his determination that plaintiff's degenerative disc disease of the cervical spine was not a "severe" impairment is not legal error.

Plaintiff's next argument before the Court is that the ALJ erred in her evaluation of the credibility of plaintiff's subjective complaints of pain. The Fourth Circuit has developed a two-step process for evaluating a plaintiff's credibility regarding subjective complaints of pain in accordance with the Commissioner's regulations. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); 20 C.F.R. § 404.1529 (2005); See also Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of

-8-

Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements ("SSR 96-7p").

Under the Craig analysis, plaintiff must produce objective medical evidence of an impairment which could reasonably be expected to produce the pain he alleges. As further explained by the court in Craig,

> [F]or pain to be found to be disabling, there must be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers. The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment "which could reasonably be expected to produce" the actual pain, in the amount and degree, alleged by the claimant.

Craig, 76 F.3d at 594. In this case, the ALJ found at step one of the Craig analysis that plaintiff "had a medically determinable impairment reasonably expected to result in pain and other symptoms." (Tr. at 19)

At step two of the Craig analysis, the ALJ must evaluate the intensity, persistence and functionally limiting effects of plaintiff's pain. The regulations require the ALJ to consider the location, duration, frequency and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; and daily activities. 20 C.F.R. § 404.1529(c)(3) (2005); see also SSR 96-7p.

Plaintiff argues that the ALJ's analysis of plaintiff's subjective complaints of pain at step two of the Craig analysis is flawed for several reasons. In the first place, plaintiff argues

that the ALJ's consideration of plaintiff's testimony regarding his activities of daily living in determining his credibility is in error. (Docket No. 21, Pl.'s Br. at 6-9) Specifically, plaintiff argues that the ALJ erroneously based her determination of plaintiff's credibility in part on plaintiff's testimony that he performs "some yard work and household chores as able. He reported that [he] enjoyed reading, attending to his children's activities, caring for his horses and other animals, and working on old tractors." (Id., citing Tr. at 20) The ALJ also noted in her opinion that "[plaintiff] testified that he has 'good' days and 'bad' days and spends some days in bed. Other days he is able to take his son to school and cut grass." (Tr. at 19)

Plaintiff argues that "[the ALJ's] evaluation [of plaintiff's activities of daily living] is inconsistent with prevailing case law and the evidence of record." (Docket No. 21, Pl.'s Br. at 6) The Court disagrees with plaintiff's characterization of the ALJ's Craig analysis. The Fourth Circuit addressed this issue in Higginbotham v. Califano, 617 F.2d 1058 (4th Cir. 1980)). Under the specific facts set forth in Higginbotham, the Court held that:

> [Plaintiff's] ability to do . . . chores sustained by daily medication for her nerves is insufficient to establish that she can engage in any substantial, gainful activity which requires concentration without distraction by pain. The [ALJ's] conclusion . . . is contrary to the medical and vocational evidence. Accordingly, <u>we conclude the administrative record, considered in its entirety, does not support the Secretary's decision</u>.

Higginbotham, 617 F.2d at 1060 (emphasis added).

The case before this Court is inapposite to Higginbotham in that the ALJ's subjective evaluation of plaintiff's activities of

-10-

daily living is not used to say plaintiff could perform certain jobs. Plaintiff's self-reported activities of daily living is but one factor among several factors which the ALJ uses to determine plaintiff's residual functional capacity. The ALJ also supported her determination that plaintiff is capable of performing a significant range of medium work by referring to the medical evidence of record. For example, the ALJ noted the Medical Expert's testimony that plaintiff took medication which helped his IBS, and that his IBS had remained stable for five years. (Id. at 19) The ALJ further noted that although plaintiff's treating physicians also considered his IBS to be stable, plaintiff testified that "he has daily problems with irritable bowel syndrome." (Id. at 19)

The ALJ also evaluated the duration, intensity, and frequency of plaintiff's pain. (Id.) For example, the ALJ noted that plaintiff "stated that his heart condition is under control with medication but [he] complained of daily pain." (Id. at 19) However, Dr. Albert Griffin, plaintiff's cardiologist, reported on January 18, 1999, that plaintiff was "doing well with no complaints," (id. at 20), and Dr. Bryan, the Medical Expert, testified that the medical records indicate that plaintiff does not suffer from chest pain. (Id. at 19) As to functional restrictions, plaintiff testified that he could sit for up to 30 minutes, lift up to 40 pounds, and stand for only a few minutes at a time. (Id. at 19) The ALJ also noted that she considered plaintiff's functional restrictions, as determined by the state agency consultants at the

-11-

initial and reconsideration levels, in determining plaintiff's credibility. (Id. at 20) Additionally, the ALJ considered plaintiff's testimony that he used over-the-counter medication for pain control as a factor in her credibility determination. (Id.)

Finally, the Court notes that in this case, in contrast to Higginbotham, the ALJ considered plaintiff's testimony that he had some periods which were more productive than others, and that he performed his activities of daily living at his own pace as his symptoms allowed. See Tr. at 19. Accordingly, the Court finds that the ALJ's analysis of plaintiff's credibility is not in error under the standard set forth in Higginbotham.

Plaintiff's next argument before the Court is that the ALJ based her decision with regard to plaintiff's credibility solely on the lack of objective medical evidence supporting plaintiff's claim that he suffers from disabling impairments, rather than on the regulatory factors discussed above. (Docket No. 21, Pl.'s Br. at 10-11) This is clearly not the case. As discussed above, the ALJ relied not only on the lack of objective medical evidence to support plaintiff's subjective complaints of pain, but also on the above-mentioned regulatory factors, such as plaintiff's self-reported activities of daily living; plaintiff's functional limitations, both self-perceived and as determined by the state agency consultants; the location, intensity and duration of plaintiff's pain; and on plaintiff's use of over-the-counter pain medication. (Tr. at 18-20) While there are certainly regulatory factors that the ALJ did not touch on, such as the side effects of

-12-

plaintiff's prescription medications and the other modalities used by plaintiff to alleviate pain, the ALJ's discussion was clearly sufficient to meet the substantial evidence standard. Accordingly, the Court finds that the ALJ's analysis on this point is not in error.

Plaintiff's next argument on the issue of his credibility determination is that the ALJ made several references to objective evidence in the record which are "incomplete and selective or inconsistent with the evidence of record." (Docket No. 21, Pl.'s Br. at 10) For example, the ALJ states that plaintiff was "fired" from his last job, but fails to state that the termination was a result of plaintiff's excessive absenteeism due to health related issues. (Id. at 10-11) Plaintiff also notes that the ALJ states that he began "seeking" disability in 1997, when in fact plaintiff only discussed the possibility of disability with his doctor in 1997. (Id. at 11) Finally, plaintiff argues that the ALJ states that plaintiff's IBS was stable at the time of the hearing, but failed to add that plaintiff's episodes of IBS may have been triggered by his stressful job environment. (Id. at 12)

"Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) In this case, plaintiff's allegations of error are largely matters of semantics, rather than substance. The ALJ's characterization of the evidence

-13-

in the record, when viewed as a whole, is free of prejudicial error.

Plaintiff's final argument on this issue of credibility is that the ALJ erroneously stated that there were inconsistencies between plaintiff's allegations and the evidence of record. (Docket No. 12, Pl.'s Br. at 12-13) The Court disagrees. As discussed at length above, there were inconsistencies in the record concerning plaintiff's self-reported cardiac pain, cervical pain, and the severity of his IBS. Accordingly, the Court finds that the ALJ's analysis of plaintiff's credibility is supported by substantial evidence.

Plaintiff's final argument before the Court is that the ALJ erred in her evaluation of plaintiff's residual functional capacity ("RFC") in two ways. First, plaintiff contends that the ALJ failed to satisfy the requirements of Social Security Ruling 96-8p, <u>Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u> ("SSR 96-8p"), 1996 WL 374184 (S.S.A.), which states that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observation)." (Docket No. 21, Pl.'s Br. at 13-14, <u>citing</u> SSR 96-8p at *7)

Contrary to plaintiff's assertions, the ALJ's opinion contains a lengthy narrative which fully summarizes the medical evidence of record, as well as plaintiff's testimony and the testimony of Dr. Bryan, the medical expert. <u>See</u> Tr. at 18-20. The ALJ began her

narrative discussion by noting that "[t]he Administrative Law Judge must determine whether [plaintiff] retains the residual functional capacity to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy." (Id. at 18) The ALJ then proceeded to discuss all portions of plaintiff's RFC.

For example, the ALJ noted plaintiff's testimony that "he is able to sit up to 30 minutes, lift up to 40 pounds, and stand only a few minutes." (Id. at 19) The ALJ also stated that the Medical Expert testified that plaintiff's diagnoses include "fibromyalgia, degenerative disc disease, chronic rhinitis, irritable bowel syndrome, and coronary artery disease with myocardial infarction in 1999 with no current symptoms," but that medication has helped plaintiff's IBS, and plaintiff has no chest pain. (Id.) Furthermore, the ALJ noted that she had considered the residual functional capacity forms completed by the state agency consultants at the initial and reconsideration levels in determining plaintiff's RFC. (Id. at 20) Finally, ALJ found that plaintiff had "moderate restrictions of activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace." (Id.) Accordingly, the Court finds that the ALJ satisfied her duty of explanation, as set forth in SSR 96-8p, in developing plaintiff's RFC.

Plaintiff also argues that the ALJ's opinion lacked sufficient specificity as to the frequency with which plaintiff needed to

alternate between sitting and standing, as required by Social Security Ruling 83-12, <u>Titles II and XVI: Capability to Do Other Work - the Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work</u> ("SSR 83-12"), 1983 WL 31253 (S.S.A.)(Docket No. 21, Pl.'s Br. at 14). SSR 83-12 states that:

> Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253 at *4. Plaintiff's argument misinterprets SSR 83-12. Rather than requiring the ALJ to define with rigid specificity the exact amount of time that can elapse between each episode where plaintiff changes positions, as plaintiff appears to believe, this ruling merely recommends that a VE be consulted, which the ALJ did do.

In this case, the VE testified that plaintiff could work as a laundry worker, DOT Code 361.685.018, or dining room attendant, DOT Code 311.677-018, both medium unskilled jobs. (Tr. at 545-46) The VE also stated that plaintiff could work as an assembler of small products, DOT Code 706.684-022, an assembler of plastic hospital products, DOT Code 712.687-010, and an ampoule filler, DOT Code 559.685-018, which are light, unskilled jobs. (<u>Id</u>. at 546-47) Finally, the VE testified that all four of these jobs would "allow[] for a sit/stand option," and stated that her testimony was based on "[her] experience in observing these jobs directly in the labor market." (<u>Id</u>. at 549); <u>See</u> Social Security Ruling 00-4p,

-16-

<u>Policy Interpretation Ruling Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u> ("SSR 00-4p"), 2000 WL 1898704 (S.S.A.), at *2 (Information about a particular job's requirements . . . may be available . . .from a [vocational expert's] experience in job placement or career counseling.); <u>See also</u> <u>Branham v. Garner</u>, 283 F. Supp. 293 (D.C. Va. 1968).

Accordingly, the Court finds that the ALJ did not commit an error of law with regard to his characterization of plaintiff's residual functional capacity.

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for summary judgment (docket no. 20) be denied, that defendant's motion for judgment affirming the decision of the Commissioner (docket no. 22) be granted, and that this action be dismissed with prejudice.

_/s/ Russell A. Eliason_
**United States Magistrate Judge**

September 7, 2005